Mark V. Cornelison, ISB No. 7682
Steven L. Taggart, ISB No. 8551
**MAYNES TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: mcornelison@maynestaggart.com
      staggart@maynestaggart.com

*Counsel for Defendants Marco Antonio Garcia Lozano and Clara Ontiveros Conde*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>MARCO ANTONIO GARCIA LOZANO and CLARA ONTIVEROS CONDE, husband and wife,<br><br>Debtors. | Case No. 20-40607-JMM<br><br>Chapter 11, Subchapter V |
| TONY MARTINS CATTLE LLC, an Idaho Limited Liability Company,<br><br>  Plaintiff,<br><br>vs.<br><br>MARCO ANTONIO GARCIA-LOZANO and CLARA ONTIVEROS CONDE, husband and wife; and MGM CATTLE, LLC, an Idaho Limited Liability Company<br><br>  Defendants. | Adversary Case No. 20-08057 JMM |

**MOTION TO DISMISS ADVERSARY COMPLAINT**

COMES NOW Defendants Marco Antonio Garcia Lozano ("Mr. Garcia") and Clara Ontiveros Conde ("Mrs. Garcia") in response to the Plaintiff Tony Martins Cattle, LLC, an Idaho Limited Liability Company's, ("TM"), Adversary Complaint (Dkt. No. 1)

(the "Complaint") and moves the Court to dismiss the same pursuant to F.R.C.P. 12(b)(6) as applied to this proceeding through F.R.B.P. 7012 for the following reasons.

## LEGAL STANDARDS FOR RULE 12(b)(6)

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true only well pled factual allegations in the complaint, but is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir., 1994); *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir., 2001). As such, "the tenet that a court must accept as true all of the allegations of a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the pleading standard of F.R.C.P. 8(a)(2), which is applicable to adversary proceedings pursuant to F.R.B.P 7008, does not require detailed factual allegations, it does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not suffice, nor does a complaint that tenders "naked assertion[s]" devoid of "further factual enhancement." *Id. at 555, 557*.

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, states "a claim to relief that is plausible on its face" such that the court could reasonably infer the defendant's liability for the alleged misconduct. *Id.* at 556, 570. The plausibility standard does not equate to the "probability requirement," but does

ask for more than a sheer possibility that a defendant acted unlawfully. *Id*. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557. Ultimately, where the well-plead facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing F.R.C.P. 8(a)(2)).

## ARGUMENT

Plaintiffs' Complaint should be dismissed because, as pled, it 1) fails to provide a factual basis in support of its counts under the applicable legal standards, and 2) fails to provide a legal basis in support of its counts.

> **I.    None of the Counts in the Complaint provide sufficient supporting facts to support any of the alleged claims.**
>
> **A.    Count I, based on 523(a)(2)(A), should be dismissed.**

Any party asserting nondischargeability under § 523(a)(2)(A) must establish five elements: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000).

A plaintiff must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018),

*cert. denied*, 139 S. Ct. 640 (2018) (citations omitted). The requirements for pleading fraud under F.R.C.P. 9(b) are clear - "In alleging fraud or mistake, a party must state <u>with particularity</u> the circumstances constituting fraud or mistake." (emphasis added). The Complaint falls far short of these standards.

As a preliminary matter, the majority of Plaintiff's factual allegations are vaguely made "upon information and belief." The Complaint is devoid of specific facts that would support any of the counts for relief. As another preliminary matter, the facts pled in the Complaint itself undermine this Count for fraud by its own admission that Defendants notified Plaintiff of the stolen cattle within a few weeks of learning about it and making its first police report for the stolen cattle. Complaint, ¶ 31-32. Such action is not consistent with fraud.

First, the Complaint fails to plead with particularity the facts supporting the Count for fraud. It alleges "Defendants made false and material statements and representations to Martins…" Complaint, ¶ 48. The particular Defendant purportedly making these statements is never identified despite there being three Defendants—Mr. Garcia, Mrs. Garcia, and MGM Cattle. Additionally, the Complaint fails to address "when" or "where" these alleged statements or activity took place. But perhaps most fatal to the complaint is that the nature of these statements, the "what" is never pled except in Plaintiff's near restatement of the element of fraud that "Defendants made false and material statements and representations to Martins regarding Defendants' raising and care of Martins' animals pursuant to their contractual relationship." Complaint, ¶48. Whether the false and material statements were regarding the number of cattle, whether the cattle were stolen, the death loss, or about what the calves ate for breakfast—we are left to guess.

Second, even if the Court were to take into account the Factual Allegations section of Plaintiff's complaint in order to try and decipher Defendants' fraud, it still falls short of providing the "who," "when," "where," "why," and "how" in support of its conclusion:

> 41.    Defendants represented to Martins that all of Martins' animals were still located on Defendants' site when in fact the animals were dead, stolen, or otherwise missing.  As a result, Martins had been paying Defendants the agreed upon calf raising fee for animals which were not actually being raised.  Based on information and belief, Defendants have been overcharging Martins for a period of six months.
>
> 42.    Upon information and belief, Defendants have taken the monies paid by Martins even though the animals for which Defendants were paid were either dead, stolen, or otherwise missing.  As such, Defendants knowingly made misrepresentations to Martins.

Complaint, ¶¶41-2.  These statements, even assuming their truth, fail to indicate which of defendants made these statements, whether or not Defendants actually knew the calves were stolen or when they learned they were stolen, when the statements were made, the nature of the alleged misrepresentations to Plaintiff, where these statements were made, and whether or not Plaintiff relied on these statements.

As an example, Plaintiff's Complaint fails to make any claim as to when Defendants learned of the stolen cattle.  This is fatal to Plaintiff's 523(a)(2) Count since even if Defendants had made a misrepresentation about the number of cattle at the feedlot, unless Defendants *knew* such statement was *false* or *deceptive,* it would fail the second prong of the test laid out in *Turtle Rock.*  A false statement or misrepresentation alone is insufficient to establish fraud, it requires that the bad actor have "knowledge of the falsity or deceptiveness of his statement or conduct." *Turtle Rock* at 1085.  Plaintiff's pleading is devoid of any language establishing Defendants' knowledge.

Third, Plaintiffs are required to show damage. *Davidson*, 889 F.3d at 964.  Plaintiff's Complaint only alleges that "Martins suffered damages as a result of

Defendants' statements and representations in the amount of at least $302,400.00." Complaint at ¶52. However, there are no facts, foundation, or underlying data provided that would support this calculation of damages.

Accordingly, Plaintiffs' § 523(a)(2)(A) Count I should be dismissed in full.

### B.    Count II, based on 523(a)(4), should be dismissed.

This Count is based on an allegation of embezzlement. *See* Complaint, ¶¶ 54-55. Embezzlement requires a showing that: "1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud." *First Del. Life Ins. Co. v. Wada (In re Wada),* 210 B.R. 572, 576 (9th Cir. BAP 1997).

As a preliminary matter, in order to plead embezzlement, Plaintiff's Complaint must indicate fraud. Similar to Defendants' argument in I.A. above, Plaintiff's Complaint has failed to plead with particularity the elements for fraud and thus, its Count II for embezzlement also fails. However, the failure to plead fraud is not the only fatal error in Plaintiff's Complaint, as it also fails to address the second prong—that the nonowners appropriated the property "to a use other than which it was entrusted." *First Del. Life Ins.* at 576.

Plaintiff's allegation of embezzlement focuses on the care the calves received at the Defendants' feedlot, not that the calves were misappropriated to another use:

> the calves under Defendants' care were not cared for in accordance with industry standards and as a result experienced a much higher rate of death loss than what was typical for a custom calf raiser in the area.

Complaint ¶ 58. Even assuming Plaintiff's allegations were correct and that there were no other contributing factors to the death loss, such claim would only give rise to a claim for negligence, but not a claim of embezzlement.

Second, Plaintiff's next allegation that Defendants did not reveal the "true number" of calves that had died under their care or gone missing, but continued to charge Plaintiffs "as if the calves were still alive and under Defendant's [sic] care" still fails to show a misappropriation of the calves entrusted to their care. Complaint ¶57.

Accordingly, Plaintiff's § 523(a)(4) Count II should be dismissed.

### C.   Count III, based on 523(a)(6), should be dismissed.

The threshold for a 523(a)(6) claim is high, requiring both a willful and malicious injury. A willful injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Id*. (citations omitted).

The heart of this Count as pled is the following: "Defendants acted willfully and maliciously when they chose not to care for the Martins' animals thereby causing their deaths and Defendants acted willfully and maliciously when they billed and accepted payment from Martins for calves which were dead, solen [sic], or otherwise missing." Complaint ¶ 63. This is a bald recitation of the elements of a 523(a)(6) claim and nothing more.

First, at best, assuming this assertion is true, it would give rise to a claim for negligence in the care and treatment of the animals or in the operation's cattle tracking and billing processes. However, a mere claim for the negligent management of

Defendants' operation does not give rise to a Section 523(a)(6) nondischargeability claim. As noted by the Court in *Kawaauhau,* had Congress intended to "exempt debts resulting from unintentionally inflicted injuries…[it] might have selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.'" *Kawaauau* at 61. However, that is not the case. Willful and malicious injury requires much more. As noted in *Kawaauhau,* the language of 523(a)(6):

> triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'

*Id.* at 61-62, citing to Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964).

In this case, Plaintiff makes no attempt to plead that Defendants deliberately intended to cause financial injury or harm to Plaintiff.

Second, Plaintiff fails to show injury. *Kawaauhau* at 61. Plaintiff's only claim for damages is the following, self-serving, conclusory statement: "As a result of Defendants' actions, Martins suffered damages in the amount of at least $302,400.00." Complaint, ¶ 68. No justification, support, data, or foundation for this number has been provided. It is unknown how Plaintiff arrived at this number, and Plaintiff has not attempted to demonstrate how it suffered damages in this amount.

Third, the Count amounts to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations…" which are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this third Count, Plaintiff claims Defendants' behavior was willful without showing the specific injury beyond a possible contract breach or negligent management of its operation. It claims Defendants were malicious in their behavior without laying out support for the individual required

factors. Even this broad assertion is undermined by the Complaint when it is admitted that Defendants notified Plaintiff of the stolen cattle. Complaint ¶ 31-32.

Accordingly, Plaintiff's §523(a)(6) Count III also should be dismissed.

### D. Count IV, Fraudulent Transfer Act or the Uniform Voidable Transactions Act, should be dismissed.

Plaintiff's fourth count seems to be loosely based on Idaho's "Uniform Voidable Transactions Act." Idaho Code § 55-901 *et seq*. However, this Act is never cited. Prior to 2015, this Act was known as the "Uniform Fraudulent Transfer Act." Assuming that Plaintiff intended its Count IV to be a claim under Idaho's Uniform Voidable Transactions Act, it should also be dismissed for failure to meet the basic elements and due to the fact that this Count is not plead sufficiently, it appears that Plaintiff's wish to apply it to a non-party to the underlying bankruptcy matter, and they have failed to demonstrate any harm.

The elements of the Uniform Voidable Transactions Act as to present or future creditors are:

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>     (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>     (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>         1. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>         2. intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.
> (2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, as to whether:
>     (a) The transfer or obligation was to an insider;
>     (b) The debtor retained possession or control of the property transferred after the transfer;

    (c) The transfer or obligation was disclosed or concealed;
    (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (e) The transfer was of substantially all the debtor's assets;
    (f) The debtor absconded;
    (g) The debtor removed or concealed assets;
    (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
    (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
    (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
(3) A creditor making a claim under subsection (1) of this section has the burden of proving the elements of the claim by a preponderance of the evidence.

Idaho Code § 55-913.

First, it seems that Plaintiff's primary contention is against MGM Cattle, a non-party in the current Chapter 11 case. However, even assuming that MGM Cattle was a party to the current case, Plaintiff fails to provide any facts demonstrating either of the two prongs of Idaho Code § 55-913—that Defendants made the transfer 1) "with actual intent to hinder, delay, or defraud any creditor of the debtor;" or 2) that Defendants made the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation…". Idaho Code § 55-913(1)(a) and (1)(b).

Plaintiff fails to plead any facts demonstrating Mr. and Mrs. Garcia's intent to hinder, delay, or defraud Tony Martins by accepting the transfer of assets from MGM Cattle. Plaintiff's primary contention under 913(1)(a) seems to be the following:

> 72. Upon information and belief, after Martins filed the State Court action, Defendants transferred the assets of MGM Cattle, LLC into their names personally in an effort to avoid Martin's execution and levy upon the assets.

> 73. Upon information and belief, after Martins filed the State Court action, Defendants concealed the disposition of MGM Cattle, LLC's assets from Martins.
> 74. Upon information and belief, after Martins filed the State Court action, and immediately after the Defendants transferred the assets from MGM Cattle, LLC to their names individually, the Defendants filed for Bankruptcy.

Complaint at ¶ 72-74. Other than the act of receiving assets from a wholly-owned entity that Plaintiff also claims to be an alter ego of Defendants[1] prior to filing bankruptcy, the only claim supporting an intent to hinder, delay, or defraud is Plaintiff's statement that Defendants "concealed the disposition of MGM Cattle, LLC's assets from Martins." Similar to the arguments above, such statement is unsupported by Plaintiff as Plaintiff fails to provide any particulars of such concealment and whether it was induced by such.

Similarly, the fact that MGM Cattle transferred assets to Defendants prior to filing a bankruptcy is insufficient to establish intent to defraud, hinder, or delay, as there was nothing preventing MGM Cattle from filing its own bankruptcy. However, in so doing, it would double the fees and costs associated with the administration of two bankruptcies thus decreasing the pool available from which to pay creditors. This is even more so the case if, as Plaintiff believes, MGM Cattle is nothing more than an alter ego of Defendants. See Complaint at ¶ 97. It is unclear whether Plaintiff believes that the mere act of a party filing a bankruptcy would rise to the level of fraud for purposes of Idaho's Uniform Voidable Transactions Act. However, to the degree that such is Plaintiff's argument it has provided no legal basis for it.

Second, Plaintiff's claim of violation of the Uniform Voidable Transactions Act also fails under the second prong – that reasonably equivalent value was not provided in

---

[1] Complaint at ¶97

MOTION TO DISMISS ADVERSARY COMPLAINT – ADV. CASE 20-08057
Page 11

exchange for the transfer for similar reasons as the others. No evidence is provided supporting this claim. There is no supporting data of the value that was provided for the exchange of assets, what assets were transferred, or what debts and liabilities were also transferred.

Third, inherent in a claim for a violation of the Uniform Voidable Transactions Act is that a creditor suffer some type of harm. In this case, Plaintiff fails to demonstrate any harm, and in fact, it is to the benefit of Defendants' creditors that MGM Cattle's assets were transferred for two reasons: 1) it decreased the cost of administration related to filing two separate and parallel bankruptcies (for MGM Cattle and Defendants), and 2) it created a larger pool of assets for creditors. Prior to the transfer of assets, creditors of MGM Cattle would only be eligible for repayment from MGM Cattle's assets absent a successful piercing of the corporate veil. However, as a result of the transfer, the pool of assets available for creditors now also includes all of Defendants' personal property.

For these reasons, Plaintiff's Uniform Voidable Transactions Act Count IV also should be dismissed.

### E. Count V, Breach of Duties Owed to Creditors, should be dismissed.

Similar to Count IV, Plaintiff provides no legal basis for Count V, other than Defendants owed "certain statutory" and "certain common law" duties to MGM Cattle. These "duties" are never defined, nor is the "breach" of these duties defined by Plaintiff. In a motion to dismiss, it is the duty of the Court to determine whether a plaintiff has stated a "viable claim in the Complaint," not guess at what Plaintiff is averring and give it meaning. *Tagare v. NYNEX Network Sys. Co.,* 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996).

Accordingly, Plaintiffs breach of unnamed duties Count V should be dismissed.

### F. Count VI requesting a Piercing of the Corporate Veil, should be dismissed.

Breaching the liability protections associated with a corporate entity is not easily done. "To prove that a company is the alter ego of a member of the company, a claimant must demonstrate "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow." *VFP VC v. Dakota Co.*, 141 Idaho 326, 335, 109 P.3d 714, 723 (2005). Such a determination should be made "cautiously and only where circumstances justify it." *Jolley v. Idaho Sec., Inc.,* 90 Idaho 373, 414 P.2d 879, 887 (1966).

Moreover, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* at 678, citing to *Bell Atlantic Corporation et. al., v. William Twombly,* 127 S.Ct. 1955 at 570, 2007.

The Complaint simply fails to provide a single fact to show either of the prongs required. There is not a single allegation, beyond an unsupported conclusory statement, that "Defendants Marco Antonio Garcia Lozano and Clara Ontiveros Conde and Defendant MGM Cattle, LLC were one and the same." Complaint ¶ 95. There is a broad claim that various principles might hypothetically allow veil piercing but there is not a single example referenced on the part of Defendants or any entity. Complaint, ¶ 97.

Additionally, there is no articulation of why an inequitable result would burden Plaintiffs without veil piercing, especially given the fact that Plaintiff is also attempting to avoid the transfer of assets from MGM Cattle to Defendants personally.

Count VI should also be dismissed.

**WHEREFORE, Defendants pray for Judgment against Plaintiff as follows:**

A.  That Plaintiff's complaint be dismissed in its entirety for failure to state any claims upon which relief could be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

B.  That Defendants' be awarded a reasonable attorney's fees in the sum of $5,000.00 and actual costs should this matter be dismissed pursuant to IRCP §§ 12-120(3) and 12-121.

C.  For such other and further relief as the Court may deem just and proper.

DATED:    October 14, 2020

MAYNES TAGGART PLLC

/s/ *Mark V. Cornelison*
MARK V. CORNELISON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2020, I filed a copy of the attached pleading with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

PARTIES SERVED:

David P. Claiborne, Esq., Attorney for Tony Martins Cattle, LLC – david@sawtoothlaw.com

Evan T. Roth, Esq., Attorney for Tony Martins Cattle, LLC – evan@sawtoothlaw.com

Matthew A. Sturzen, Esq., Attorney for Tony Martins Cattle, LLC – matt@sawtoothlaw.com

And as otherwise noted on the Court's Notice of Electronic Filing.

I HEREBY CERTIFY FURTHER that on October 14, 2020, I served a copy of the above referenced pleading(s) on the following parties via postage prepaid, first class, U.S. Mail:

PARTIES SERVED:

Mr. and Mrs. Marco Lozano-Garcia
656 Greenbrier Dr.
Heyburn, ID  83336

DATED:	October 14, 2020

*/s/ Theresa G. Carson*
Theresa G. Carson
Legal Assistant